FILED

2025 Oct-15  PM 08:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **GLOBO GYM, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:25-CV-01626-SGC** |
| | ) | |
| **F45 TRAINING INCORPORATED** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW, Plaintiff, Globo Gym, LLC, pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, and submits this, its First Amended Complaint:

## PARTIES

1.    Plaintiff, Globo Gym, LLC ("GG LLC"), is an Alabama limited liability company with its principal place of business at 5842 Water Point Lane, Hoover, Alabama 35244.

2.    Defendant, F45 Training Incorporated ("F45"), is a Delaware corporation with its principal place of business at 3601 South Congress Avenue, Suite E, Austin, Texas 78704.

## JURISDICTION AND VENUE

3.      This action was originally filed in the Circuit Court of Jefferson County, Alabama.  On September 24, 2025, F45 removed this action to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, on the basis of diversity jurisdiction.  GG, LLC does not intend to seek remand of this action to the Circuit Court of Jefferson County, Alabama and, thus, consents to this Court's assertion of subject matter jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a).

4.      This Court has personal jurisdiction over F45, as F45 availed itself of the privilege of doing business in Alabama by contracting with GG LLC and deciding to work alongside GG LLC and its members, all of whom are adult resident citizens of the State of Alabama, to provide services that would be performed and managed in Alabama.  In addition, F45 knew that GG LLC was an Alabama limited liability company, and that GG LLC's primary place of business was in Hoover, Alabama.  F45 also knew that GG LLC intended to use goods and services provided by F45 for purposes of operating a gym in Birmingham, Alabama; in fact, F45 was directly involved in, and had knowledge regarding, the shipment of equipment, apparel and other goods to the gym in Birmingham operated by GG LLC.  In addition, at all times relevant to the allegations made the basis of the claims asserted herein, F45 automatically withdrew money, on a monthly basis, from accounts maintained by GG LLC at banks located in Alabama.

5.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to GG LLC's claims occurred in the Southern Division of the Northern District of Alabama.

## FACTUAL HISTORY

6.    In mid-2021, GG LLC was approached by Hechai, LLC ("Hechai"), an F45 franchisee that was operating an F45 gym in Downtown Birmingham, Alabama (the "Downtown Location"), to purchase Hechai's rights to operate an F45 gym in the Downtown Location.

7.    This initial contact led to the execution of an Asset Purchase Agreement that was executed by authorized representatives of GG LLC, as Purchaser, and Hechai, as Seller, on September 2, 2021 (the "APA").

8.    Hechai and GG LLC provided notice to F45 of Hechai's intention to transfer its right to operate the Downtown Location.  Yet, at no point did F45 object or otherwise seek to stop the transfer to GG LLC of control over the operation of the Downtown Location.

9.    To the contrary, F45 substantively participated in the transfer of Hechai's right to operate the Downtown Location.  Specifically, F45 requested from GG LLC, and GG LLC provided to F45, information regarding the Downtown Location and GG LLC's prospective operation thereof, including, but not limited to pictures of the Downtown Location and the equipment located therein and

information regarding insurance coverage that was in place with respect to GG LLC's operation of the Downtown Location.

10.     These communications, which were exchanged between GG LLC and F45, from August 2021 and December 2021, were exchanged during a period in which GG LLC was operating the Downtown Location with F45's conditional approval of such operation.  Ultimately, however, in or around December 2021 or January 2022, F45 provided notice to GG LLC that, based on the information GG LLC had provided to F45 over the preceding months, GG LLC had F45's non-conditional approval to operate the Downtown Location.

11.     Between September 2021 and August 2024, GG LLC operated the Downtown Location with F45's knowledge and consent.  During that time, in exchange for monthly payments made to F45 by GG LLC, via automatic withdrawals from GG LLC's Alabama-based operating account, F45 was supposed to, and did on an intermittent basis, provide GG LLC with a range of services that GG LLC utilized in operating the Downtown Location, including, but not limited to:

a)      F45's transmission of pre-recorded workouts for display on televisions in the Downtown Location;

b)      Access to Mindbody customer relationship management software which GG LLC used, among other applications, to store the personal and payment

information of the Downtown Location's members and to otherwise assist in the administration of the Downtown Location's business operations;

c)    Access to an F-45 administered email system;

d)    Marketing support;

e)    Operational and technical support for daily management of the Downtown Location; and

f)    Access to F45-approved equipment.

12.    Between September 2021 and August 2024, GG LLC operated the Downtown Location and, in connection therewith, frequently communicated with various F45 representatives regarding the operation of the Downtown Location, all of whom communicated with GG LLC consistent with their understanding that GG LLC was the entity that had the right to operate, and was in fact operating, the Downtown Location.

13.    In fact, in June 2022, at an F45 conference in Las Vegas, Nevada, F45 named the Downtown Location the best F45 location in Alabama and presented an award to GG LLC, consistent with this commendation.

14.    In addition, during the summer of 2023, GG LLC submitted a request through F45's digital franchisee dashboard for a temporary pause on F45's collection of the monthly fee pertaining to F45's operation of the Downtown Location.  Jamie Britt, F45's Vice President of Sales, responded to this request and asked GG LLC to

provide additional information relating to its request. Yet, despite GG LLC's provision of the requested additional information, it received no follow-up response from Mr. Britt, or anyone else at F45.

15.    Later, on October 16 and 19, 2023, GG LLC received emails from, respectively, Austin Miele, F45's Franchise Performance Manager, and Kirsty Forbes, F45's Vice President of Marketing, regarding a marketing event for Alabama based F45 gyms. Importantly, Ms. Forbes' email of October 19, 2023, which was addressed to all Alabama-based F45 franchisees, included representatives of GG LLC, but did not include representatives of Hechai.

16.    The marketing event made the basis of Mr. Miele and Ms. Forbes' email communications, the "Alabama Track Event," was initially contemplated to be a series of marketing events conducted in the individual territories in which F45 gyms were operating in Alabama. This plan was subsequently modified, and a single marketing event, to be held in the Birmingham area, was planned. Ultimately, however, the "Alabama Track Event" was cancelled.

17.    During an in-person meeting with Austin Miele, GG LLC expressed its frustration regarding the cancellation of the Alabama Track Event and F45's other failures to provide necessary marketing, operational and technical support.

18.    The frustrations that GG LLC discussed with Mr. Miele were only one instance, among many, of GG LLC's attempts to communicate with F45 regarding

F45's failure to provide the services that GG LLC was paying F45 to provide. Specifically, during 2021, 2022, 2023 and 2024, GG LLC repeatedly raised concerns with F45 regarding:

a)    F45's failure to provide marketing support to the Downtown Location, including F45's failure to invest in local advertising, participate in the creation of content for posting on social media, and its failure to hold marketing events that were specifically designed to drive business to the Downtown Location.

b)    F45's failure to provide corporate support of GG LLC's operation of the Downtown Location, which such failure primarily took the form of the lack of availability of F45 personnel to address issues and concerns raised by GG LLC, F45's delay in responding, or failure to respond, to issues and concerns raised by GG LLC, and F45's failure to keep its promise to provide GG LLC with the opportunity to meet with F45 corporate personnel on a quarterly basis to discuss identification and resolution of issues regarding the Downtown Location's operation.

c)    F45's provision of inadequate technical support, as F45 routinely failed to provide timely assistance when issues with the Downtown Location's IT infrastructure arose.  For example, F45 provided GG LLC with an email address for a technical support contractor in Australia and was told by F45 that GG LLC could submit technical issues regarding the transmission of pre-recorded workouts to this contractor on a 24/7 basis and could expect a near-instantaneous response. In

actuality, however, issues communicated to this contractor frequently went unanswered for hours, even days, thus forcing GG LLC to implement a workaround solution (which took the form of a GG LLC employee leading the workout) to continue operations.

19.     In August 2024, GG LLC's employees awoke one morning to discover that F45, without providing any notice or forewarning to GG LLC, had discontinued providing the pre-recorded workouts to the Downtown Location, locked GG LLC out of the Mindbody customer relationships management software that it used in the administration of the Downtown Location, locked GG LLC out of its F45 administrated email accounts and otherwise fully and completely eliminated GG LLC's ability to operate the Downtown Location, which such operation was essentially immediately shuttered.

20.     Given the gravity of F45's actions, and their catastrophic effects on GG LLC's operation of the Downtown Location, GG LLC attempted to contact F45 to determine why F45 had taken the actions it had.  However, notwithstanding the undeniably urgent nature of GG LLC's initial attempts to contact F45, F45 ignored GG LLC.

21.     Finally, approximately six (6) weeks after it had taken actions which caused the immediate shuttering of the Downtown Location, F45 informed GG LLC that its predecessor, Hechai, had failed to make payments it was required to make

under its franchise agreement with F45, thus prompting F45 to take the actions it had

taken in shuttering the Downtown Location.

22.    GG LLC countered by telling F45 what it already knew—namely, that

GG LLC had assumed control of the operation of the Downtown Location from

Hechai; that F45 had allowed GG LLC to operate the Downtown Location, initially

with conditional approval and later with non-conditional approval of such operation;

that GG LLC had been continuously operating the Downtown Location since

September 2021; and that F45 had knowledge and was aware of GG LLC's operation

of the Downtown Location, which such knowledge and awareness was demonstrated

by the fact that: (a) F45 had, on a monthly basis since 2021, been automatically

withdrawing money from GG LLC's operating account to pay amounts purportedly

owed in connection with GG LLC's assumption of control of the operation of the

Downtown Location from Hechai; (b) F45 had been communicating with GG LLC

regarding various aspects of the Downtown Location's operation for almost three (3)

years; and (c) F45 had given GG LLC an award relative to its operation of the

Downtown Location.

23.    In response, F45 told GG LLC that it had no franchise agreement with

F45 and, thus, the F45 would not reinstate the services it had provided to GG LLC

since August 2021, services that were absolutely essential to GG LLC's operation of

the Downtown Location, and services that GG LLC, not Hechai, had paid for via the monthly payment that F45 had withdrawn from GG LLC's bank account.

24.    As a result of F45's conduct, as set forth above, the profitable business that GG LLC was operating in the Downtown Location was forced to close, causing damages to GG LLC.

## COUNT I: BREACH OF CONTRACT

25.    Plaintiff hereby adopts and incorporates the allegations contained in paragraphs 1 through 25 of this First Amended Complaint, as if fully set forth herein. To the extent this Count, any aspect of this Count, or any of the allegations or claims contained in this Count are argued or deemed to be inconsistent or incompatible with any other Count, allegation or claim contained in this First Amended Complaint, it is pleaded in the alternative.

26.    GG LLC and F45 were parties to a contract pursuant to which F45 agreed to provide GG LLC with support and assistance that was essential to GG LLC's operation of the Downtown Location in exchange for monthly payments made by GG LLC, which such monthly payments F45 automatically withdrew from GG LLC's operating account.

27.    The support and assistance that F45 agreed to provide to GG LLC included, but was not limited to:

a)    F45's transmission of pre-recorded workouts for display on televisions in the Downtown Location;

b)    Access to Mindbody customer relationship management software which GG LLC used, among other applications, to store the personal and payment information of the Downtown Location's members and to otherwise assist in the administration of the Downtown Location's business operations;

c)    Access to an F-45 administered email system;

d)    Marketing support;

e)    Operational and technical support for daily management of the Downtown Location; and

f)    Access to F45-approved equipment.

28.    GG LLC complied with its obligations under its contract with F45.

29.    Conversely, F45 did not comply with its contract with GG LLC, which such non-compliance manifested itself in at least the following acts and/or omissions:

a)    F45's failure to use money that GG LLC paid to it for the advertising and marketing purposes for which such money was earmarked;

b)    F45's failure to provide adequate operational and technical support, including timely assistance when various issues with respect to the Downtown

Location's IT infrastructure arose, including, but not limited to issues with respect to F45's transmission of the pre-recorded workouts;

c)      F45's failure to respond and/or its undue delay in responding to requests for assistance from GG LLC regarding various aspects of GG LLC's operation of the Downtown Location; and

d)      F45's decision in August 2024 to discontinue the provision of support and assistance to GG LLC, which such support and assistance GG LLC had paid for, and which such support and assistance was absolutely essential to GG LLC's continued operation of the Downtown Location.

30.    GG LLC sustained damages as a result of F45's breaches of its contract with GG LLC in that such breaches harmed and/or detracted from the profitability of GG LLC's operation of the Downtown Location and ultimately forced GG LLC to close the Downtown Location.

WHEREFORE, Globo Gym, LLC demands judgment against F45 Training Incorporated for compensatory and punitive damages in an amount to be decided by struck jury, plus interest, costs, and any further relief as may be just, proper, and available under Alabama law.

## COUNT II: NEGLIGENCE/WANTONNESS/RECKLESSNESS

31.    Plaintiff hereby adopts and incorporates the allegations contained in paragraphs 1 through 25 of this First Amended Complaint, as if fully set forth herein.

To the extent this Count, any aspect of this Count, or any of the allegations or claims contained in this Count are argued or deemed to be inconsistent or incompatible with any other Count, allegation or claim contained in this First Amended Complaint, it is pleaded in the alternative.

32.    By virtue of their commercial relationship, F45 owed GG LLC duties to, without limitation, provide services to GG LLC, which such services were essential to GG LLC's operation of the Downtown Location.

33.    F45 breached the duties it owed to GG LLC by negligently and/or wantonly providing services to GG LLC over the course of their commercial relationship pertaining to GG LLC's operation of the Downtown Location.

34.    More specifically:

a)    F45 failed to provide a sufficient level of marketing support for the Downtown Location.  On numerous occasions, GG LLC brought to F45's attention that F45 was failing to assist GG LLC in the local brand development of the Downtown Location and, more specifically, that F45 was not spending money on local advertising, was not engaging with GG LLC to develop content highlighting the Downtown Location for deployment on social media, and was not planning and executing marketing events designed to increase membership at the Downtown Location.

b)      F45 failed to provide GG LLC with any consistent point of corporate contact with whom Globo Gym could work to address operational issues and otherwise grow the Downtown Location.  Communications from GG LLC to F45 were routinely not responded to, or such response was significantly delayed, and the frequency of in-person visits to the Downtown Location from F45 corporate personnel fell far short of the quarterly visits F45 promised it would provide.

c)      F45 failed to provide adequate technical support to GG LLC, including support to address issues regarding the lynchpin of GG LLC's operation of the Downtown Location—the pre-recorded workouts that were sent on a daily basis to the Downtown Location.  More specifically, GG LLC was given an email address to which it was instructed to direct issues that arose with respect to the receipt of televised workouts, and Globo Gym's expectation was that it would receive 24/7/365, near-instantaneous support in the event of an issue with the televised workouts. Yet, in the frequent instances that there were issues with the televised workouts, Globo Gym never received instantaneous support. Instead, responses from the international vendor designed to address these issues were delayed by hours or days such that, in most cases, GG LLC had already implemented a workaround (primarily in the form of an F45 employee leading the class) by the time that such response was received.

35.    F45 also breached the duties it owed to GG LLC by negligently/wantonly discontinuing the services it had provided to GG LLC over an almost three-year period on grounds that GG LLC's predecessor, Hechai, had failed to make payments that it was required to make under its franchise agreement with F45.  This stated rationale was contrary to the course of conduct between GG LLC and F45, both in the form of F45's non-conditional approval of GG LLC's operation of the Downtown Location, and in the form of F45's repeated, continuing and consistent communications with GG LLC regarding all aspects of the Downtown Location's operations between the time that F45 initially became aware that Hechai was going to transfer its right to operate the Downtown Location to GG LLC until the day that F45 discontinued its provision of the services that were essential to GG LLC's operation of the Downtown Location.

36.    GG LLC sustained damages as a result of F45's breaches of the duties it owed to GG LLC, in that such breaches harmed and/or detracted from the profitability of GG LLC's operation of the Downtown Location and ultimately forced GG LLC to close the Downtown Location.

WHEREFORE, Globo Gym, LLC demands judgment against F45 Training Incorporated for compensatory and punitive damages in an amount to be decided by struck jury, plus interest, costs, and any further relief as may be just, proper and available under Alabama law.

## COUNT III: FRAUD

37.    Plaintiff hereby adopts and incorporates the allegations contained in paragraphs 1 through 25 of this First Amended Complaint, as if fully set forth herein. To the extent this Count, any aspect of this Count, or any of the allegations or claims contained in this Count are argued or deemed to be inconsistent or incompatible with any other Count, allegation or claim contained in this First Amended Complaint, it is pleaded in the alternative.

38.    F45 knowingly engaged in fraudulent, misleading and/or deceptive conduct by affirmatively misrepresenting information relevant and material to its business relationship with GG LLC, which such business relationship manifested itself primarily in GG LLC's operation of the Downtown Location.

39.    Specifically:

a)    Between September 2021 and August 2024, F45 accepted monthly payments from GG LLC under auspices that such payments were being made pursuant to a franchisor-franchisee relationship that existed between F45 and GG LLC.

b)    In or about August or September 2021, F45 granted GG LLC conditional approval to operate the Downtown Location, and later, in December 2021 or January 2022, F45 granted GG LLC non-conditional approval to operate the Downtown Location.

c)      F45 frequently, consistently and repeatedly communicated with GG LLC regarding various issues associated with its operation of the Downtown Location, including, but not limited to issues associated with GG LLC's seeking of non-conditional approval to operate the Downtown Location (which such communications were exchanged with various F45 employees, agents, contractors and representatives between August 2021 and January 2022); optimization of GG LLC's performance of the Downtown Location (which such communications were exchanged with various F45 employees, agents, contractors and representatives over the entire course of the relationship between GG LLC and F45 pertaining to GG LLC's operation of the Downtown Location, but which such communications were initiated Benjamin Ludwig in August 2021); GG LLC's request for a pause in monthly payments made in connection with its operation of the Downtown Location (which such communications were exchanged with Jamie Britt during the summer of 2023); and the scheduling of marketing events, including the Alabama Track Event (which such communications were exchanged with various F45 employees, agents, contractors and representatives over the entire course of the relationship between GG LLC and F45 pertaining to GG LLC's operation of the Downtown Location, but which such communications, to the extent they related to the Alabama Track Event, were exchanged between GG LLC members, including Billy Dennis,

and Austin Miele (F45 Performance Manager) and Kirsty Forbes (F45 Vice President Marketing).

40.    All of the above-described conduct and communications were fraudulently done, performed and/or made, and/or were the product of fraudulent intent on the part of F45, because such conduct and/or communications on the part of F45 either explicitly or implicitly confirmed that GG LLC was in a franchisor-franchisee relationship with GG LLC when, in actuality, F45 knew at that time that it did not consider itself to be in a franchisor-franchisee relationship with GG LLC relative to GG LLC's operation of the Downtown Location.

41.    GG LLC relied to its detriment on F45's fraudulent conduct and communications by continuing to operate the Downtown Location and investing substantial funds in its growth.  Such reliance on the part of GG LLC was reasonable in light of the fact that: (a) F45 affirmatively represented to GG LLC that it had, initially, conditional approval, and subsequently, non-conditional approval, to operate the Downtown Location; (b) F45 accepted the monthly payments made to it by GG LLC in connection with GG LLC's operation of the Downtown Location and, in consideration for its receipt of such payments, provided GG LLC services that were absolutely essential to its operation of the Downtown Location; and (c) various F45 employees, agents, contractors and/or representatives communicated with GG

LLC regarding various aspects of GG LLC's operation of the Downtown Location between August/September 2021 and August 2024.

42.    As a result of its reasonable reliance on the fraudulent conduct and/or statements of F45, GG LLC was caused to suffer damages in the form of losses attributable to and arising from the shuttering of the business that it was operating in the Downtown Location.

WHEREFORE, Globo Gym, LLC demands judgment against F45 Training Incorporated for compensatory and punitive damages in an amount to be decided by struck jury, plus interest, costs, and any further relief as may be just, proper and available under Alabama law.

## COUNT IV: FRAUDULENT SUPPRESSION/CONCEALMENT

43.    Plaintiff hereby adopts and incorporates the allegations contained in paragraphs 1 through 25 of this First Amended Complaint, as if fully set forth herein. To the extent this Count, any aspect of this Count, or any of the allegations or claims contained in this Count are argued or deemed to be inconsistent or incompatible with any other Count, allegation or claim contained in this First Amended Complaint, it is pleaded in the alternative.

44.    The nature of the commercial relationship between F45 and GG LLC created a duty on the part of F45 to disclose material information to GG LLC regarding their commercial relationship.

45.    F45 fraudulently suppressed and/or concealed from GG LLC, during the entire course of their commercial relationship relating to and/or arising from GG LLC's operation of the Downtown Location, that F45 did not consider itself to be in a franchisor-franchisee relationship with GG LLC relative to GG LLC's operation of the Downtown Location.

46.    F45's suppression and/or concealment of this material fact induced GG LLC to continue to operate the Downtown Location and invest substantial funds in its growth between August/September 2021, when it assumed operational control over the Downtown Location, and August 2024, when F45 discontinued its provisions of services to GG LLC which, in essence, immediately shuttered the Downtown Location.

47.    Had F45 communicated to GG LLC its position that it did not consider itself to be in a franchisor-franchisee relationship with GG LLC relative to GG LLC's operation of the Downtown Location at any point prior to when it did (which such communication initially occurred at least six (6) weeks after GG LLC's operation of the Downtown Location was shuttered as a result of F45's discontinuation of its provision of essential services to GG LLC) GG LLC would not have continued to operate the Downtown Location in the manner it did, and certainly would not have made the significant investments it did in growing its business in the Downtown Location.

48.    As a result of F45's fraudulent concealment and/or suppression of the fact that it did not consider itself to be in a franchisor-franchisee relationship with GG LLC relative to GG LLC's operation of the Downtown Location, GG LLC was caused to suffer damages in the form of losses attributable to and arising from the shuttering of the business that it was operating in the Downtown Location.

WHEREFORE, Globo Gym, LLC demands judgment against F45 Training Incorporated for compensatory and punitive damages in an amount to be decided by struck jury, plus interest, costs, and any further relief as may be just, proper and available under Alabama law

## COUNT V: EQUITABLE ESTOPPEL

49.    Plaintiff hereby adopts and incorporates the allegations contained in paragraphs 1 through 25 of this First Amended Complaint, as if fully set forth herein. To the extent this Count, any aspect of this Count, or any of the allegations or claims contained in this Count are argued or deemed to be inconsistent or incompatible with any other Count, allegation or claim contained in this First Amended Complaint, it is pleaded in the alternative.

50.    F45 accepted payment from GG LLC from September 2021 through August 2024, thus impliedly communicating to GG LLC that F45 had knowledge of and had consented to GG LLC's operation of the Downtown Location and would be

providing support and assistance to GG LLC in its operation of the Downtown Location.

51.   GG LLC relied on F45's implied communication via its acceptance of, and dependence on, the assistance and support F45 provided to GG LLC in its operation of the Downtown Location.

52.   F45 engaged in conduct that was contradictory to the conduct that impliedly communicated to GG LLC that F45 had knowledge of and consented to GG LLC's operation of the Downtown Location and would be providing support and assistance to GG LLC in its operation of the Downtown Location.  Specifically, when F45 discontinued its provision of support and assistance to GG LLC in August 2024, it stated to GG LLC that it did not have a franchise agreement with GG LLC and, thus, would not be reinstating the provision of support and assistance that GG LLC relied upon in operating the Downtown Location.

53.   GG LLC sustained damages as a result of such contradictory conduct on the part of F45.

WHEREFORE, Globo Gym, LLC demands judgment against F45 Training Incorporated for compensatory and punitive damages in an amount to be decided by struck jury, plus interest, costs, and any further relief as may be just, proper and available under Alabama law.

## COUNT VI: PROMISSORY ESTOPPEL

54.    Plaintiff hereby adopts and incorporates the allegations contained in paragraphs 1 through 25 of this First Amended Complaint, as if fully set forth herein. To the extent this Count, any aspect of this Count, or any of the allegations or claims contained in this Count are argued or deemed to be inconsistent or incompatible with any other Count, allegation or claim contained in this First Amended Complaint, it is pleaded in the alternative.

55.    Through its words and conduct, F45 made clear and definite promises to GG LLC that:

a)    GG LLC was approved to operate the Downtown Location as an F-45 branded gym; and

b)    F45 would continue to provide operational, marketing, and technical support necessary for GG LLC's ongoing operation of the Downtown Location.

56.    These promises were made by F45 through its communications and dealings with GG LLC's representatives, including, but not limited, to Ben Ludwig, Jamie Britt, Austin Miele, and Kirsty Forbes, and through F45's conditional, and later, non-conditional approval of GG LLC's operation of the Downtown Location.

57.    F45 reasonably expected, and in fact intended, that GG LLC would rely upon these promises in continuing to operate, invest in, and promote the Downtown Location as an F45 gym.

58.     GG LLC did rely upon F45's promises by expending significant sums to maintain, improve, and market the Downtown Location, including sums expended in performing renovations, purchasing equipment, maintaining staff, and organizing promotional and marketing-related activities.

59.     In reliance on F45's promises, GG LLC continued to allow automatic monthly withdrawals for nearly three (3) years and refrained from seeking other affiliations or protections against the sudden withdrawal of corporate support.

60.     F45 subsequently reneged on its promises by discontinuing all operational and technical support in August 2024, despite prior assurances that GG LLC was a valued franchisee entitled to such support.

61.     As a direct and proximate result of F45's conduct and GG LLC's reliance on its promises, GG LLC has sustained damages, including lost profits, loss of goodwill, and the forced closure of the Downtown Location.

WHEREFORE, Globo Gym, LLC demands judgment against F45 Training Incorporated for compensatory and punitive damages in an amount to be decided by struck jury, plus interest, costs, and any further relief as may be just, proper and available under Alabama law.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY.**

Respectfully submitted,

/s/ R. Rhett Owens
R. Rhett Owens (OWE038)
Tabitha L. Dailey (DAI018)
*Attorneys for the Plaintiff*

OF COUNSEL:
BODEWELL, LLC
1286 Oak Grove Road, Suite 200
Birmingham, AL 35209
Tel.: (205) 533-7878
Fax: (205) 922-5819
Email:      Rhett@bodewell-law.com
Email:      Tabitha@bodewell-law.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon the following this 15th day of October 2025.

Edward S. Sledge IV
T. Brooks Proctor
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203-2104

Michael L. Sturm
Lathrop GPM LLP
600 New Hampshire Ave. NW
The Watergate, Suite 700
Washington, DC 20037

/s/  R. Rhett Owens
Counsel for the Plaintiff